FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ SEP 04 2019 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

v.

JUAN CARLOS SORIANO,

                Defendant.

------------------------------------------------------------X

**MEMORANDUM & ORDER**
18-CR-508 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On February 1, 2019, Juan Carlos Soriano pled guilty to the sole count in the Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Juan Carlos Soriano is hereby sentenced to time served, 3 years of supervised release, and a $100.00 special assessment.

## BACKGROUND

On September 18, 2018, the Government filed an Indictment charging Juan Carlos Soriano ("Defendant") with one count of illegal reentry, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(1). Indictment, ECF No. 1. On February 1, 2019, Defendant pled guilty to the sole count of the Indictment pursuant to a plea agreement. *See* Plea Agreement, ECF No. 15.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.    Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in

open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

II. **Analysis**

A. **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on March 21, 1976, in Santo Domingo, Dominican Republic, to Gladys (Soriano) Ferran and Melido Martin Soriano. Presentence Investigation Report ("PSR") ¶ 30, ECF No. 16. Both of his parents are naturalized United States citizens. *Id.* Defendant reported he never knew his father and is very close with his mother, who currently resides in New York, New York with her sister. Defendant's mother is aware of his arrest and conviction and remains supportive. *Id.*

Defendant's mother and maternal grandmother, now deceased, raised him in Santo Domingo under adequate financial circumstances. *Id.* ¶ 31. When Defendant was 6 years old,

his mother immigrated to the United States to secure better-paying employment than her previous job at a chocolate factory; she sent money back for Defendant's care. *Id.* According to Immigration Customs Enforcement ("ICE") records, Defendant first entered the United States and received permanent residency status on June 6, 1987. *Id.* Defendant joined his mother in New York, New York when he was 17 years old and lived with her intermittently until his deportation in 2013. *Id.* While in the Dominican Republic, he resided with his aunt in his maternal grandmother's house. *Id.* Since his return to the United States, he has lived with either family in New York, New York, or his girlfriend, Melisa Mejia, in Queens, New York. *Id.*

Defendant reported he started the 12th grade of his formal education at Santo Thomas de Quino, a Catholic school in the Dominican Republic, but he did not complete his high school degree because he immigrated to the United States. *Id.* ¶ 47. In the United States, Defendant took preparatory classes to study for his General Educational Development diploma but did not take the test. *Id.*

Defendant has been in several romantic relationships with different women throughout his life. From the age of 21 until the age of 27, he was involved with Alexis Garcia, with whom he has a daughter, age 21. *Id.* ¶ 32. Although the relationship ended because "they grew apart," Defendant advised he has a good relationship with Ms. Garcia. *Id.* Defendant also reported he provided what financial assistance he could and had regular contact with his daughter throughout her life. *Id.* From approximately 1998 until 2004, Defendant was involved with Denise Matos, with whom he also has a daughter, age 19. *Id.* ¶ 33. Defendant advised he always provided informal financial support for his daughter and does not know whether Ms. Garcia or Ms. Matos are aware of his arrest for the instant offense. *Id.* ¶¶ 33-34. In 2004, Defendant reportedly had a "one-night stand" with a woman known as "Nana," which produced a son, age 15. *Id.* ¶ 34.

Defendant is not in contact with "Nana," whose real name is unknown. *Id.* Prior to his arrest for the instant offense, Defendant spent much time with his son, who Defendant reports is very sad about his incarceration. *Id.* According to Defendant, he and his son write to each other. *Id.* From approximately 1999 until 2009, Defendant was involved with Araceli Marrero. *Id.* ¶ 35. That relationship ended due to his infidelities. *Id.* Together they have a son, age 12. *Id.* Defendant advised he always provided financial assistance for his son and maintains a friendly relationship with Ms. Marrero. *Id.* Both Ms. Marrero and her son are aware of Defendant's arrest and conviction and remain supportive. *Id.* From 2010 until 2013, Defendant reported he was involved with Rosa Garcia, with whom he has a daughter, age 12. *Id.* ¶ 36. Probation notes, however, his daughter would have been born in 2007. *Id.* Defendant does not know whether Ms. Garcia or their daughter are aware of his current legal situation. *Id.* Since 2016, Defendant has been involved with Melissa Mejia. *Id.* ¶ 37. They were living together at the time of his arrest at the address of record, where she currently resides with her son from a prior relationship. *Id.* Defendant advised he and Ms. Mejia have a good relationship. *Id.* Ms. Mejia is employed as a corporate attorney and remains supportive.

Defendant reported he is healthy and denies any history of serious illnesses, medical conditions, hospitalizations, or prescribed medication. *Id.* ¶ 41. Defendant has no history of mental health issues but reports a history of substance abuse. *Id.* ¶¶ 42-46. He first tried marijuana when he was 13 years old and smoked one to two marijuana cigarettes daily between the ages of 20 and 24. *Id.* ¶ 43. His last use was in 2010, when he was arrested locally. *Id.* Defendant also reported trying cocaine occasionally when he was 16 years old and first tried alcohol at either 17 or 18 years old. *Id.* ¶¶ 44-45. Soon after trying alcohol, Defendant ingested it daily and occasionally binged. *Id.* ¶ 45. He has not, however, used alcohol since his arrest at

age 33. *Id.* While in New York State custody, Defendant completed a 6-month substance abuse treatment program, which he found very beneficial. *Id.* ¶ 46. Defendant reportedly counseled other inmates in this program. *Id.*

Prior to his arrest in September 26, 2018, Defendant has held jobs as a deliveryman for a bakery, a barber, and an auto mechanic. *Id.* ¶¶ 50-52. While living in Santo Domingo, he owned and operated a restaurant, which is now closed. *Id.* ¶ 52.

With respect to the underlying offense, Defendant re-entered the United States at some point after his removal following a conviction for the commission of a felony. Defendant was previously convicted of Criminal Possession of a Controlled Substance (Heroin) in the 2nd Degree on December 8, 2011. *See id.* ¶¶ 2-4, 24. For that offense, the New York County Supreme Court sentenced him to 42 months' imprisonment, and he was deported on April 16, 2013. He was on parole for this conviction until March 28, 2018. *Id.* ¶ 22. On September 26, 2018, Defendant was arrested in Queens, New York pursuant to a judicially authorized arrest warrant for the instant offense. *Id.* ¶¶ 3-4. At the time of his arrest, Defendant was in the process of destroying a "burner phone." *Id.* ¶ 4. Seven more cellphones and a drug ledger were recovered from the residence, though no narcotics were found. *Id.*

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

5

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, from disregarding U.S. law, and from engaging in illicit activity.

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to the sole count of the Indictment, which charged him with Illegal Reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(1). *See* Plea Agreement. By statute, Defendant faces a maximum term of imprisonment of ten years. *See* 8 U.S.C. §§ 1326(a), (b)(1). Defendant also faces a maximum term of supervised release of three years, *id.* § 3583(b)(2), a maximum fine of $250,000.00, *id.* § 3571(b), and a special assessment of $100.00, *id.* § 3013. Defendant is statutorily eligible for between one and five years of probation because the sole count is a Class C felony. *Id.* § 3561(c)(1).

**D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable Guideline for violations of 8 U.S.C. §§ 1326(a) and (b)(1) is Guideline § 2L1.2(a), which provides a base offense level of 8. *See* United States Sentencing Commission, Guidelines Manual ("USSG") § 2L1.2(a). Because Defendant sustained a felony conviction for which a sentence of more than 2 years was imposed prior to his deportation, an 8-level enhancement is warranted pursuant to USSG § 2L1.2(b)(2)(B).

6

Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). Because the Government intends to make a motion it was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. USSG § 3E1.1(b). Accordingly, Defendant's total offense level is 13. All parties agree with this calculation. *See* PSR ¶ 19; Def. Sentencing Mem. ("Def. Mem.") at 2, ECF No. 18; Gov't Sentencing Mem. ("Gov't Mem.") at 2, ECF No. 19.

The parties dispute the applicable criminal history category. Probation argues Defendant's criminal convictions result in a subtotal criminal history score of 3. Based on Defendant's self-reported employment at Diaz Bakery in September 2017, Probation determined Defendant has been in the United States since at least that time; accordingly, he committed the offense of illegal reentry while on parole for his December 8, 2011 conviction. PSR ¶ 24. As such, Probation adds 2 points to Defendant's criminal history per USSG § 4A1.1(d) for a total score of 5, which establishes a criminal history category of III. *Id.* ¶¶ 24-25; *see also* USSG Ch. 5, Part A. A total offense level of 13 and a criminal history category of III yields a Guidelines term of imprisonment of 18 to 24 months. USSG Ch. 5, Part A. Probation recommends a sentence of 24 months custody. Probation Sentencing Recommendation at 1, ECF No. 16-1.

Although defense counsel and the Government agree Probation's criminal history calculation is correct, they nevertheless argue the criminal history category calculated in the plea agreement, category II, should apply. *See* Def. Mem. at 2; Gov't Mem at 2. The estimate in the plea agreement was based on the limited criminal history report available at the time. *Id.* It was not until Defendant's interview with Probation that the parties learned he returned to the United States while serving his parole term, resulting in the addition of 2 criminal history points. A total

offense level of 13 and a criminal history category of II yields a Guidelines term of imprisonment of 15 to 21 months. USSG Ch. 5, Part A. The Government requests a sentence within that range. Gov't Mem. at 1. Defense counsel requests a below Guidelines range sentence. Def. Mem. at 6.

The Court expressly finds the total offense level is 13, and the criminal history category is II, which yields a Guidelines imprisonment range of 15 to 21 months.

The Court also notes the Guidelines recommend a term of supervised release of one to three years, *id.* § 5D1.2(a)(2), and a fine of between $5,500.00 and $55,000.00, *id.* § 5E1.2(c)(3). The Guidelines also suggest Defendant is ineligible for probation. *Id.* § 5B1.1 n.2.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). This factor is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, see 18 U.S.C. § 3663.

### CONCLUSION

A sentence of time served, 3 years of supervised release, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addendum barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 3, 2019
　　　　Brooklyn, New York

9